IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JORDAN MOSEMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendant. | Civil Action No. 3:17-cv-00481 |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Jordan Moseman ("Named Plaintiff"), Opt-In Plaintiffs Tchein Ali-Napo, Kemoy Allen, Nikki Hickman, Jotoria Mason, Cory Piana, Travis Redmon, Amanda Scribner, Randal Earl Silver II, Melinda Thomas, and Bradley Voight (collectively with the Named Plaintiff, the "Plaintiffs"), and Defendant U.S. Bank National Association ("U.S. Bank") (together with the Plaintiffs, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

The Parties have agreed to the settlement of this *bona fide* FLSA dispute after extensive discovery and following arm's-length negotiations that included communications between counsel as well as private mediation with an experienced third-party neutral. The Parties submit that the terms of the Settlement Agreement are fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether the Plaintiffs would obtain a judgment in their favor, and the risk of possible appeals.

## I. PROCEDURAL BACKGROUND

Named Plaintiff filed this action on August 14, 2017, alleging that U.S. Bank failed to pay him and other Anti Money Laundering ("AML") Investigators and preliminary Investigators (called Alert Operation Management Team Analysts ("AOMT Analysts") who worked as contractors at U.S. Bank through staffing agencies) overtime pay in violation of the federal FLSA and failed to pay all wages accruing to them on their regular paydays under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen Stat. § 95-25.1, *et seq*. (Dkt. No. 1.)[1] U.S. Bank has denied all of the claims asserted by Plaintiffs and denies all liability associated with any of the facts or claims alleged in the lawsuit, including denying that U.S. Bank even employed the AOMT Analysts at issue in this lawsuit.

After a preliminary phase of discovery, on June 12, 2018, this Court granted Named Plaintiff's motion to send notice of this action to similarly-situated individuals in U.S. Bank's office in Charlotte, North Carolina, who worked as non-exempt AOMT Analysts through staffing agencies or who worked as exempt AML Investigators. (Dkt. No. 33.) During the notice period, ten individuals filed consents to join the action as Opt-in Plaintiffs, all of whom affirmatively retained the Named Plaintiff's counsel as their counsel and designated Named Plaintiff as their agent for settlement purposes. (Dkt. Nos. 34-1, 35-1, 36-1, 37-1, 38-1, 39-1, 42-1.)

The Parties have engaged in extensive discovery, including the exchange of extensive documents and data; the depositions of five U.S. Bank supervisors, managers and representatives; and the deposition of the Named Plaintiff and eight of the ten Opt-In Plaintiffs. Discovery closed on September 24, 2018. (Dkt. No. 44.)

---

[1] Named Plaintiff amended his complaint on October 24, 2017, before any responsive pleading had been filed. (Dkt. No. 3.)

2

Also on September 24, 2018, in compliance with this Court's mandatory mediation requirement, the Parties participated in arm's length settlement discussions during a day-long mediation supervised by The Hon. Carl Horn, III (Ret.). (Dkt. No. 47.) As a result of these settlement discussions and mediation, the Parties agreed to settle the issues, matters, and things in dispute between and among them, the terms of which have been formalized in their Settlement Agreement and Release ("Settlement Agreement"), attached hereto as Exhibit 1.

## II. STANDARD OF REVIEW

The Parties have reached a settlement and now seek Court approval of that settlement. *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592, 2012 WL 13012965, at *1 (W.D.N.C. Aug. 14, 2012) ("FLSA cases can be settled when the settlement is supervised by a court."); *see also Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007).

Although the Fourth Circuit has not set forth specific guidelines for approval of a settlement of FLSA claims, some district courts have followed the guidelines set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *Kianpour v. Restaurant Zone, Inc.*, No. Civ. A. DKC 11-0802, 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011). In the "context of suits brought directly by employees against their employer … to recover back wages for FLSA violations," the district court "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Before approving a settlement, a district court must conclude that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

Importantly, there is a "strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons*

3

*Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). A settlement is not a trial, and a court's role is more of a balancing of the likelihoods than actual determinations of fact and law. *Id.* "A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel." *Id.* In light of the significant risks of litigating such cases, "[c]ourts have recognized a role for less-than-full-value compromise in the FLSA settlement process." *Galvez v. Americlean Services Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 WL 2522814, at *4 (E.D. Va. June 29, 2012) (citing *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at thirteen to seventeen percent of maximum recovery)).

Importantly, since this FLSA case is also a collective action, each Plaintiff here who has filed a consent-to-join form is a party plaintiff just like Named Plaintiff Jordan Moseman. As Justice Thomas explained in *Genesis HealthCare v. Symczyk*, 569 U.S. 66, 75 (2013), unlike class actions under Rule 23, FLSA collective actions under 29 U.S.C. § 216(b) are joinder cases in which individuals may affirmatively opt into the case by filing with the court a consent-to-join form, and in doing so they become a "party plaintiff." 29 U.S.C. § 216(b); *accord Campbell v. City of Los Angeles*, Nos. 15-56880 & 16-55002, 2018 WL 4354379 (9th Cir. Sept. 13, 2018) ("The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" (citing *Halle v. W. Penn Allegheny Health Sys Inc.*, 842 F.3d 215, 225 (3d Cir. 2016)).

### III.   ARGUMENT

#### A.   The Proposed Settlement Is the Product of Contested Litigation.

The settlement reached by the Parties was achieved as the result of contested litigation to resolve *bona fide* disputes concerning Plaintiffs' entitlement to alleged unpaid overtime under the

FLSA. The Parties strongly disagree over whether Plaintiffs were properly classified as exempt under the FLSA, whether the Plaintiffs who worked through staffing agencies were jointly employed by U.S. Bank, and whether liquidated damages and/or a three-year statute of limitations under the FLSA would be available under the facts of this case. The settlement was negotiated as a compromise at mediation based upon the facts as revealed through discovery and the law relevant to the case. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Defendant denies liability or wrongdoing of any kind associated with Plaintiffs' claims, and Plaintiffs believe they have meritorious claims. The Parties have determined, however, that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that the Settlement Agreement is the best way to resolve the disputes between and among them.

### B. The Settlement Is Fair, Adequate, and Reasonable.

In reviewing the record and evaluating the strength of the case to determine whether a proposed FLSA settlement is "a fair and reasonable resolution of a *bona fide* dispute over [the application of the] FLSA['s] provisions," *Lynn's Food Stores, Inc.*, 679 F.3d at 1355, courts consider the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of collective-action counsel and collective-action opt-ins after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the

5

settlement in relation to the potential recovery. *Blaney*, 2012 WL 130121965, at *1; *see also Lomascolo*, 2009 WL 3094955 at *11 (collecting and listing cases applying these factors).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. Here, the settlement was achieved at the close of discovery, before dispositive motion practice and trial, and thus the Parties were at an advanced stage of the proceedings and had exchanged adequate discovery to perform the necessary calculations to determine potential range of recovery in this case. *Lomascolo*, 2009 WL 3094955 at *11 (discovery must be sufficient to "fairly evaluate the liability and financial aspects of [the] case") (internal quotation omitted).

There is not even a hint that the settlement here is the product of fraud or collusion. The settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *See Lomascolo*, 2009 WL 3094955 at *12 (citation omitted). The settlement agreement was procured between counsel for the Parties in a mediation overseen by The Hon. Carl Horn, III (Ret.). Counsel for the Parties exchanged numerous proposals and counterproposals during the mediation on both monetary and non-monetary terms, and were able to narrow the bridge between their positions and reach a compromised settlement.

Counsel for the Parties are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions. *See generally* http://www.stephanzouras.com (Plaintiffs' counsel's website); https://ogletree.com/people/a-craig-cleland, https://ogletree.com/people/erika-leonard, https://ogletree.com/people/elizabeth-r-gift (Defendant's counsel's web profiles). Additionally, counsel for the Parties were thoroughly familiar with the facts and legal issues when settlement was reached. In the end, experienced

counsel on both sides of the matter deemed the settlement fair and reasonable. *Houston v. URS Corp.*, No. 1:08cv203 (AJT/JFA), 2009 WL 2474055, at *7 (E.D. Va. Aug. 7, 2009). The fact that settlement was negotiated by able counsel in an arm's-length manner lends credence to the notion that the settlement reached is in the best interest of all Parties. *See Howell v. Dolgencorp, Inc.*, No. 2:09-CV-41, 2011 WL 121912, at *2-3 (N.D. W.Va. Jan. 13, 2011).

Moreover, all Plaintiffs have knowingly and voluntarily agreed to the settlement. As noted above, a collective action under § 216(b) is a joinder mechanism in which, by filing a consent-to-join form with the court, individuals become a "party plaintiff." 29 U.S.C. § 216(b); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Here, each Plaintiff is a "party plaintiff," and none has sought leave to withdraw under Rule 41. Moreover, all Plaintiffs have agreed to the terms of the settlement.[2] (Ex. 2, Declaration of James B. Zouras ("Zouras Decl.") ¶ 5.) Even if this were not sufficient, which it is, when Plaintiffs filed their consent-to-join forms with the Court, they agreed to be represented by Plaintiffs' counsel and designated Named Plaintiff as their agent.[3] Where, as here, each individual plaintiff agrees to the settlement and release of wage and hour claims, courts regularly approve FLSA settlements.

Finally, the amount of the settlement is reasonable in relation to the potential recovery. The Parties conducted extensive discovery with regard to potential damages, including the production of payroll records and Plaintiffs' sworn testimony on overtime hours worked. The Settlement

---

[2] Although not required, all Plaintiffs except one (Amanda Scribner) have also executed a separate individual release. An unsigned copy of this release is attached as Ex. B to the Settlement Agreement. Despite their diligence, Plaintiffs' counsel have not yet been able to contact Plaintiff Scribner. Regardless, Ms. Scribner did previously agree to the terms of the settlement and will receive a settlement payment. (Zouras Decl. ¶¶ 5-9.)

[3] *See, e.g.*, Dkt. No. 31(a) (consent-to-join form in which Plaintiffs agree to representation and designate Named Plaintiff "as [their] agent to make decisions on [their] behalf concerning this lawsuit, the method and manner of conducting this lawsuit, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit").

Agreement provides that $124,500.00 will be allocated among the Plaintiffs as detailed in Exhibit A to the Settlement Agreement. (*See* Ex. 1, Settlement Agreement ¶ 1.A and Ex. A.) The allocation is based on Plaintiffs' employment tenure at U.S. Bank, individual rates of pay, claimed overtime hours worked, and whether they were deposed. Before mediation, Plaintiffs calculated their unpaid wages at approximately $126,500.00, exclusive of liquidated damages under the FLSA, while U.S. Bank calculated their maximum exposure at approximately $114,500.00.

## C. Plaintiffs' Counsel's Requested Attorneys' Fees and Costs Are Reasonable and Should Be Fully Awarded.

In connection with this motion, Plaintiffs respectfully move this Court for an order approving as reasonable Plaintiffs' counsel's request for attorneys' fees and out-of-pocket litigation costs.

Plaintiffs who favorably settle their cases are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). The purpose of the fee provision in § 216(b) is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). Where, as here, settlement includes an agreement as to attorneys' fees and costs in connection with the settlement of an FLSA lawsuit, a court must also determine whether the attorneys' fees and costs are reasonable. *In re Dollar General Stores FLSA Litigation*, No. 5:09-MD-1500, 2011 WL 3841652, at *2 (E.D.N.C Aug. 23, 2011). What constitutes a reasonable fee is within the sound discretion of the district court. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

8

Here, the Settlement Agreement provides that Plaintiffs' counsel will receive $117,500.00 in reasonable attorneys' fees and $15,000.00 in reasonable out-of-pocket costs. (Ex. 1, Settlement Agreement ¶ 1.B.) The requested attorneys' fees and costs are reasonable for several reasons.

First, the fees are fair and reasonable in light of the significant results Plaintiffs' counsel achieved for the Plaintiffs. (*See* Ex. 1, Settlement Agreement, Ex. A.) Second, Plaintiffs' counsel have significant FLSA experience, particularly in unpaid overtime cases such as this. (*See* Ex. 2, Zouras Decl. ¶¶ 3-4.) Awarding Plaintiffs' counsel the requested attorneys' fee amount is appropriate in light of Plaintiffs' counsel's skill and diligent effort in reaching a favorable settlement for the Plaintiffs.

Lastly, because of the complexity of the factual and legal issues here, Plaintiffs' counsel have invested considerably more time and expenses to investigate and prosecute this case than they are being compensated, and their request for attorneys' fees is reasonable in light of their lodestar. Plaintiffs' counsel's requested fees are a compromise sum representing less than 40% of what Plaintiffs' counsel have expended in association with prosecution of the lawsuit. (Ex. 2, Zouras Decl. ¶ 11.) Plaintiffs' counsel took this case on a contingency basis and have a legal services agreement that expressly provides for payment of attorneys' fees to counsel as a reasonable percentage of any settlement. (*Id.* ¶ 5.) Because of this contingency fee arrangement, Plaintiffs' counsel have not received any payment for their time spent litigating the case, nor have they received reimbursement for their out-of-pocket costs during the litigation. (*Id.*) Plaintiffs' counsel alone undertook the financial risk of potentially unsuccessful litigation. (*Id.*) Plaintiffs' counsel litigated this case aggressively and effectively, which resulted in substantial monetary relief for Plaintiffs. They took multiple depositions of Defendant's corporate witnesses, gathered the necessary information regarding the merits of Plaintiffs' claims and Defendant's defenses,

successfully moved for notice to similarly situated employees who joined the action, and conducted a detailed damages analysis for each Plaintiff. This all weighs in favor of the reasonableness of the requested attorneys' fees.

In addition to the attorneys' fees, Plaintiffs' counsel also seek reimbursement of out-of-pocket costs incurred in litigation expenses, which counsel advanced with the risk of no recovery. (Ex. 2, Zouras Decl. ¶ 10.) Those costs include filing fees, research charges, deposition fees, travel costs, and postage. (*Id.*) Plaintiffs' counsel incurred these costs on behalf of Plaintiffs, and pursuant to the legal services agreement. The Court should honor Plaintiffs' counsel's private agreements with its clients and approve the reimbursement of Plaintiffs' counsel's out-of-pocket litigation costs through this settlement.

Defendant makes no representation regarding Plaintiffs' counsel's performance or entitlement to any particular fee award, but does not oppose either the attorneys' fees or out-of-pocket costs request. For all the reasons stated herein, this Court should approve the requested attorneys' fees and costs as reasonable.

**D.     The Court Should Approve a Service Payment to the Named Plaintiff.**

In addition, for his significant contribution to the prosecution and resolution of the lawsuit and in consideration for executing a general release of all potential claims arising out of his employment at U.S. Bank, the Settlement Agreement provides that Named Plaintiff Jordan Moseman will receive a service payment of $8,000.00 in addition to his settlement share. (Ex. 1, Settlement Agreement ¶ 1.C.)

Courts have approved service payments if they are fair and reasonable. *See, e.g.*, *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2015 WL 12748271, at *4 (E.D. Va. Mar. 20, 2015) (awarding $12,500.00 service awards in FLSA action to named plaintiffs who agreed to general releases

10

which were broader than the release of claims to the opt-in plaintiffs and who devoted substantial time to assisting counsel in preparing the case); *Leigh v. Bottling Grp., LLC*, No. CIV.A. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012) (approving a $9,000.00 incentive fee to a lead plaintiff "took the initiative to commence the action; … has been personally involved at every stage of the litigation; and … achieved a significant result").

Jordan Moseman's role in this litigation was crucial. He initiated the lawsuit, reviewed and approved the Complaint, conferred and corresponded with counsel and, in addition to sitting for a full-day deposition, provided sworn declaration testimony in support of the motion for notice to similarly-situated employees. Mr. Moseman provided valuable information and documents relating to the claims and defenses in this case, and the litigation conferred a substantial benefit on all Plaintiffs. Also, as noted above, in their consent-to-join forms, Plaintiffs have designated Mr. Moseman as their agent, so he had the responsibility to represent not only his own but also their interests in this action. A service payment not only recognizes Mr. Moseman's time and effort and risks taken, but also advances public policy by encouraging other individuals to come forward and protect the rights of others in collective actions such as this one.

Due to Mr. Moseman's efforts and assistance in settling this matter, the Court should award him the requested service payment.

### IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Parties respectfully request that the Court grant this Motion, approve the proposed FLSA settlement, and issue an Order in the form of the Proposed Order Approving Settlement, attached hereto as Exhibit 3.

Dated: December 5, 2018                Respectfully submitted,

                                                                By: */s/ James B. Zouras*

James B. Zouras (*Pro Hac Vice*)
Teresa M. Becvar (*Pro Hac Vice*)
Catherine T. Mitchell (*Pro Hac Vice*)
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
Tel: (312) 233.1550
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
cmitchell@stephanzouras.com

Philip J. Gibbons, Jr.
N.C. Bar No. 50276
GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Place
Suite 325
Charlotte, North Carolina 28277
Tel: (704) 612.0038
phil@philgibbonslaw.com

*Attorneys for Plaintiffs*

By: */s/ Elizabeth R. Gift*

Elizabeth R. Gift
N.C. Bar No. 44331
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: (704) 342.2588
Facsimile: (704) 342.4379
E-mail: elizabeth.gift@ogletree.com

A. Craig Cleland (*Pro Hac Vice*)
Erika L. Leonard (*Pro Hac Vice*)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA 30303
Telephone Number: 404.881-1300
Facsimile: 404.870.1732
Email: craig.cleland@ogletree.com
erika.leonard@ogletree.com

*Attorneys for Defendant*